UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROB LEAR,<br><br>              Plaintiff,<br><br>       v.<br><br>SEATTLE HOUSING AUTHORITY, et al.,<br><br>              Defendants. | CASE NO. C13-0347JLR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Defendant City of Seattle's ("City") motion for summary judgment dismissal of the Mayor of the City of Seattle ("Mayor"), the Seattle City Council ("City Council"), and the Seattle Office of Civil Rights ("Civil Rights Office"). (Mot. (Dkt. # 54).) Plaintiff Rob Lear has not filed an opposition to the City's motion for summary judgment. Nevertheless, the court has considered the City's motion, all

ORDER- 1

submissions filed in support, the applicable law, and the balance of the record. Being fully advised, the court GRANTS the City's motion.

## II. BACKGROUND

Mr. Lear alleges various causes of action against the Defendants including violations of 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and numerous other federal and state causes of action. (*See generally* Am. Compl. (Dkt. # 46).) All of Mr. Lear's claims appear to stem from a history of alleged mistreatment that started in 1996 when Mr. Lear began residing in low-income housing provided by the Seattle Housing Authority ("SHA"). (*See generally id.*) For purposes of deciding this motion, however, it is only necessary to focus on Mr. Lear's claims as they pertain to the City Council, the Civil Rights Office, and the Mayor.

Mr. Lear's amended complaint alleges that the City Council and the Mayor "conspired to change the Public Nuisance laws 'under color' around the time they transferred [Mr. Lear] to Stewart Manor." (*Id.* at 3; *see also id.* at 7, 15.) Specifically, Mr. Lear alleges that the City Council's involvement in the conspiracy against him is traceable to its drafting and passing of housing policies, and that the Mayor's role in the conspiracy stems from him appointing Commissioners to the SHA Board. (*Id.*) Mr. Lear also alleges that the City Council and the Mayor tried to have him killed by a local street gang in January 2010. (*Id.* at 7, 9.) Finally, Mr. Lear's complaint alleges that the Civil Rights Office violated his constitutional rights by failing to properly investigate his complaints against SHA. (*Id.* at 15.)

# III. ANALYSIS

**A. Legal Standards**

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing there is "no genuine issue as to any material fact" and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. A genuine issue exists when a rational fact finder, considering the evidence currently in the record, could find in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts that show a genuine dispute for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). In judging the sufficiency of the evidence, the court is required to resolve all doubts and draw all reasonable inferences in the non-moving party's favor. *Beard v. Banks*, 548 U.S. 521, 530-31 (2006). If, however, the moving party fails to carry its initial burden of production, the opposing party has no obligation to produce countervailing evidence. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

Ordinarily, under this district's local rules "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. LCR 7(b)(2). In the summary judgment context, however, "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003) (citing Fed. R. Civ. P. 56).

**B.   The City's Motion**

The City claims to be the real party in interest and moves for summary judgment dismissal of the City Council, the Civil Rights Office, and the Mayor. (*See generally* Mot.) Apart from generally arguing that Mr. Lear has suffered no violation of his constitutional rights, the city specifically moves for dismissal of the three defendants because (1) the City Council is entitled to absolute legislative immunity, (2) the Civil Rights Office is not a separate legal entity capable of being sued, and (3) Mr. Lear has not implicated the Mayor in any of the alleged mistreatment. (*See generally id.*)

   1. There is No Evidence that the City Council and the Mayor Attempted to Have Mr. Lear Killed By a Local Street Gang.

To start, there is no evidence in the record supporting Mr. Lear's claim that the City Council and the Mayor attempted to have him killed by a local street gang. (*See* Am. Compl. at 7, 9.) Thus, the court will not entertain Mr. Lear's bare allegation.

ORDER- 4

### 2. The Seattle City Council is Entitled to Absolute Immunity From Claims Involving its Passing of Housing Policies.

Mr. Lear's amended complaint implicates the City Council for having passed the allegedly illegal housing policies that contributed to his mistreatment at the hands of SHA. (Am. Compl. at 3, 7, 15.) It is well established that "[l]ocal government officials are entitled to legislative immunity for their legislative actions." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998)). Legislative acts typically involve the formation of policy, apply to the public at large, and are adopted by traditional legislative processes. *See Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003). Here, the City Council's alleged actions of drafting and passing housing policies were "formally and indisputably legislative in character." *Cmty. House*, at 960; *see also Kuzinich v. Cnty. of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir. 1982) ("It is well-settled that adoption of an ordinance is a legislative act for purposes of immunity."). Thus, the City Council is entitled to absolute immunity and the court GRANTS the City's summary judgment motion and DISMISSES the City Council.[1]

### 3. The Seattle Office of Civil Rights is Not a Legal Entity.

Next, Mr. Lear alleges that the Civil Rights Office failed to properly investigate his complaints against SHA. (Am. Compl. at 15.) "In order to bring an appropriate action challenging the actions, policies or customs of a local government unit, a plaintiff

---

[1] To the extent Mr. Lear alleges that the Mayor played any part in the alteration of the public nuisance laws (*see* Am. Compl. at 7), the Mayor is also entitled to absolute immunity. *See, e.g.*, *Bogan*, 523 U.S. at 54-55 (local executive's involvement in drafting and passing a local ordinance is a legislative act entitled to absolute immunity).

must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred." *See Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (citing *Nolan v. Snohomish Cnty.*, 802 P.2d 792, 796 (Wash. Ct. App. 1990)).  In this case, the Civil Rights Office is a municipal department of the City and therefore is not a separate legal entity capable of being sued.  Further, no purpose would be served by naming both the City and the Civil Rights Office in the same proceeding.  *See Nolan*, 802 P.2d at 796.  Accordingly, the court GRANTS the City's summary judgment motion and DISMISSES the Civil Rights Office.

    4. <u>The Mayor is Not Sufficiently Implicated in any of the Alleged Mistreatment.</u>

   Finally, Mr. Lear fails to make any allegations in his amended complaint describing how the Mayor's appointment of Commissioners led to the subsequent mistreatment he allegedly received from SHA.  (*See* Am. Compl. at 3, 15.)  Further, there is no evidence in the record that would allow a rational fact finder to conclude that the Mayor was in any way responsible for Mr. Lear's alleged mistreatment by SHA and the court cannot reasonably infer as much.  Therefore, the court GRANTS the City's summary judgment motion and DISMISSES the Mayor.

//

//

//

//

//

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS the City's motion and DISMISSES WITH PREJUDICE the City Council, the Civil Rights Office, and the Mayor.

Dated this 25th day of October, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 7